## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF TEXAS
## AUSTIN DIVISION

| | | |
|---|---|---|
| STREAMLINE PUBLISHING, INC., | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. 1:10-cv-00965 |
| | § | |
| INTERWEAVE PRESS LLC, | § | |
| | § | |
| Defendant. | § | |

### COMPLAINT FOR DECLARATORY JUDGMENT

Plaintiff, Streamline Publishing, Inc., appearing through its undersigned counsel, alleges as follows:

### Nature of Action

1.   This is an action for a declaration of rights under the Trademark Act of 1946, as amended (the "Lanham Act"), 15 U.S.C. § 1051 *et seq*., and under the common law of Texas.

2.   A case of actual controversy within this Court's jurisdiction exists between the parties concerning these rights.  This Court is authorized to declare the rights of the parties in this case pursuant to the Federal Declaratory Judgments Act, 28 U.S.C. §§ 2201-2202.

### Jurisdiction and Venue

3.   This Court has subject matter jurisdiction over this action under Section 39 of the Lanham Act, 15 U.S.C. § 1121, and under the jurisdictional provisions of Title 28 of the United States Code, 28 U.S.C. §§ 1331, 1338, and 1367.

4.   The matter in controversy in this action exceeds the sum or value of $75,000, exclusive of interest and costs, and is between citizens of different states.  Accordingly, this Court also has subject matter jurisdiction pursuant to 28 U.S.C. § 1332.

**Parties**

5.     Plaintiff Streamline Publishing, Inc. ("Streamline") is a Delaware corporation. Streamline's Chairman and CEO and Publisher of Plein Air Magazine is B. Eric Rhoads, whose principal office is located at 803 Crystal Creek Dr., Austin, Texas 78746.  Streamline's administrative offices are located at 2090 Palm Beach Lakes Boulevard, Suite 300, West Palm Beach, Florida 33049.

6.     Upon information and belief, Defendant Interweave Press LLC ("Interweave") is a Colorado limited liability company having its principal place of business at 201 East Fourth Street, Loveland, Colorado 80537.

**Streamline and its Plein Air Marks**

7.     Founded in 1985, Streamline began as a small publishing company focused on radio-industry trade magazines.  Over the last twenty-five years, Streamline has branched out to produce several magazines, books, conferences, and companion websites in various fields.

8.     In 2003, Streamline announced that it would begin offering a magazine focused on art collectors and outdoor landscapes under the marks Plein Air Magazine and PleinAir (Streamline's "Plein Air Marks").  Streamline launched publication of the magazine in 2004, and published 17 monthly issues of the magazine through December 2005.  Representative copies of the covers of the magazine are attached as Exhibit A.

9.     Between 2003 and 2006, the Plein Air Magazine developed a large following as a result of extensive promotion and became the premier publication for outdoor painters and collectors of plein air landscapes, with distribution to over 2,500 newsstands, tens of thousands paid and complimentary subscribers, and thousands of sample copies at many art shows and events.

10. Although in 2006 Streamline began offering the Plein Air Magazine under a different name ("Fine Art Connoisseur"), Streamline has continuously used the Plein Air Marks since its debut in anticipation of the magazine's return. Streamline, for instance, owns and operates, and has continuously operated the magazine's website at www.pleinairmagazine.com, and sells back issues of the magazine at http://www.fineartconnoisseur.com/article.asp?id=41902.

11. Beginning in 2008, Streamline conducted an in-depth survey of its readers, which demonstrated an overwhelming demand for the return of Plein Air Magazine. Shortly thereafter, in February 2009, hundreds of readers joined a Facebook group entitled "Bring Back: Plein Air Magazine" dedicated to the magazine's return. A copy of the group's Facebook page is attached as Exhibit B.

12. Earlier this year, Streamline announced to advertisers an advance subscription promotion for the re-release of Plein Air Magazine in early 2011, which anticipated over 20,000 subscribers. Streamline's announcement garnered a number of mentions in various art community websites and Facebook pages. A copy of Streamline's media kit relating to this announcement is attached as Exhibit C.

**Defendant and Its Activities**

13. On November 9, 2010, following publicity surrounding the possible relaunch of Streamline's Plein Air Magazine, Interweave filed an intent-to-use federal trademark application for the mark PLEIN AIR MAGAZINE for "electronic publications, namely, magazine featuring instructions and information about plein air painting recorded on computer media" and a "general feature magazine in the field of plein air painting." A copy of Interweave's trademark application is attached as Exhibit D.

14. Upon information and belief, Interweave has made no use of the mark PLEIN AIR MAGAZINE, other than issuing a special issue of its "American Artist" magazine entitled "Everything You Need to Know About Plein Air Painting" on or around February 25, 2010. A copy of the cover of that special issue, which uses a logo for "Plein Air" nearly identical to Streamline's logo for its Plein Air Magazine, is attached as Exhibit E.

15. On December 15, 2010, Interweave sent to Streamline a cease-and-desist letter asserting that Interweave owns rights in the trademarks Plein Air Painting and Plein Air Magazine, and alleging that Streamline's plan to re-release its Plein Air Magazine would cause confusion in the minds of the consuming public as to the source or sponsorship of its publications. Interweave demanded that Streamline "cease all use or plans to use" the mark PleinAir and/or Plein Air Magazine, destroy all materials on which the mark had been applied, and threatened to "take all appropriate action" if those demands were not met by December 21, 2010. A copy of the letter is attached as Exhibit F.

## Streamline's Reasonable Apprehension of Imminent Litigation

16. Interweave's claims and demands have created a reasonable apprehension of litigation and have placed a cloud over Streamline's ability to make use of its Plein Air Marks and relaunch its Plein Air Magazine, and thereby caused uncertainty to Streamline in connection with its business.

17. Streamline has invested, and continues to invest, substantial resources in development and relaunch of Plein Air Magazine. Interweave's allegations have created uncertainty regarding Streamline's continuing ability to use this mark.

18. Interweave's allegations regarding Streamline's use of the mark Plein Air Magazine brings Streamline into adversarial conflict with Interweave.

19. An actual and justiciable controversy exists between the parties based on Interweave's claims and demands.

20. So that it may continue to use its Plein Air Marks and relaunch its Plein Air Magazine without interference from Interweave, Streamline desires to promptly resolve this controversy and establish that Streamline has protectable rights and priority in its Plein Air Marks, that Interweave has no protectable rights in the marks PLEIN AIR MAGAZINE and Plein Air Painting, that Interweave is infringing the trademark rights of, or unfairly competing with, Streamline.

## COUNT I
## DECLARATION THAT STREAMLINE HAS PRIORITY IN ITS PLEIN AIR MARKS

21. Streamline repeats the allegations above as if fully set forth herein.

22. Streamline began using its Plein Air Marks in connection with its magazine, in commerce which may lawfully be regulated by Congress, long before Interweave used or applied to register the mark PLEIN AIR MAGAZINE, Plein Air Painting, or any confusingly similar mark.

23. Streamline has continuously used its Plein Air Marks in commerce since at least as early as 2003.

24. Streamline has never abandoned its Plein Air Marks.

25. Based on these activities, Streamline has priority over Interweave in the Plein Air Marks, and thus is not infringing any rights Interweave may assert in the mark PLEIN AIR MAGAZINE and/or Plein Air Painting.

## COUNT II
### DECLARATION THAT INTERWEAVE HAS NO PROTECTABLE RIGHTS IN THE MARKS PLEIN AIR MAGAZINE AND PLEIN AIR PAINTING

26. Streamline repeats the allegations above as if fully set forth herein.

27. Interweave's alleged marks PLEIN AIR MAGAZINE and Plein Air Painting are merely descriptive of magazines and electronic publications in the field of plein air painting.

28. The marks PLEIN AIR MAGAZINE and Plein Air Painting have not acquired a secondary meaning or otherwise become distinctive of Interweave's goods in commerce.

29. Therefore, Interweave owns no protectable trademark rights in the alleged marks PLEIN AIR MAGAZINE and Plein Air Painting.

## COUNT III
### DECLARATION THAT INTERWEAVE'S USE OF THE MARK PLEIN AIR MAGAZINE WOULD CONSTITUTE TRADEMARK INFRINGEMENT AND UNFAIR COMPETITION

30. Streamline repeats the allegations above as if fully set forth herein.

31. Streamline used its Plein Air Marks in connection with its magazine in commerce continuously and substantially exclusively for more than five years before Interweave began using or applied to register the mark PLEIN AIR MAGAZINE and/or Plein Air Painting.

32. The Plein Air Marks have acquired a secondary meaning and become distinctive of Streamline's goods in commerce. Relevant consumers in the field of plein air painting recognize Streamline's Plein Air Marks and associate them exclusively with a single source, namely Streamline's Plein Air Magazine.

33. Interweave's planned use in commerce of the mark PLEIN AIR MAGAZINE and/or Plein Air Painting, in connection with magazines and electronic publications in the field of plein air painting, its likely to cause confusion, or to cause mistake, or to deceive as to the

affiliation, connection, or association of Interweave with Streamline, or as to the origin, sponsorship, or approval of Interweave's goods by Streamline and/or its Plein Air Magazine.

34. Therefore, Interweave's use and/or planned use of the marks PLEIN AIR MAGAZINE and Plein Air Painting infringe or would infringe Streamline's trademark rights and constitute unfair competitions in violation of Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a)(1), and the common law of Texas.

35. Interweave's use and/or planned use of the marks PLEIN AIR MAGAZINE and Plein Air Painter have been made willfully, with conscious disregard or indifference to Streamline's prior use and rights in the Plein Air Marks. Therefore, this is an exceptional case within the meaning of 15 U.S.C. § 1117(a).

## **PRAYER**

WHEREFORE, Streamline prays for the following relief:

(a) A judgment declaring that (1) Streamline has priority in its Plein Air Marks based on its continuous use and/or non-abandonment of the marks in commerce since 2003; (2) Interweave has no protectable rights in the marks PLEIN AIR MAGAZINE and Plein Air Painting; and (3) Interweave's use and/or planned use of the marks PLEIN AIR MAGAZINE and Plein Air Painting is likely to cause confusion as to the source or sponsorship of Interweave's products or services and constitutes trademark infringement, unfair competition, and/or otherwise violates the rights of Streamline under federal and common law;

(b) Streamline recover its costs and reasonable attorney fees incurred in this action; and

- 8 -

    (c)        Streamline recover such other relief as the Court may deem appropriate.

Respectfully submitted,

Date:  December 20, 2010

  /s/ William G. Barber
William G. Barber
Texas Bar No. 01713050
Jered E. Matthysse
Texas Bar No. 24072226
PIRKEY BARBER LLP
600 Congress Avenue, Suite 2120
Austin, Texas  78701
(512) 322-5200

ATTORNEYS FOR PLAINTIFF